1
2
3
4
5
6
7
8
9
10
11
12
13
14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILD FISH CONSERVANCY,

Plaintiff,

v.

WASHINGTON DEPARTMENT OF FISH & WILDLIFE, *et al.*,

Defendants.

Case No. C21-169-RSL

ORDER GRANTING
MOTION TO DISMISS AND
GRANTING MOTION FOR
LEAVE TO AMEND AND
SUPPLEMENT COMPLAINT

15   This matter comes before the Court on (1) defendants Washington State Department of

16   Fish and Wildlife and its named Commissioners' "Motion to Dismiss Pursuant to FRCP

17   12(b)(1) & (6)" (Dkt. # 16); (2) plaintiff Wild Fish Conservancy's "Motion for Leave to File

18   First Amended and Supplemental Complaint" (Dkt. # 18), and (3) plaintiff's "Motion to

19   Supplement the Factual Record" (Dkt. # 34).  The Court heard oral arguments on the motion to

20   dismiss and the motion for leave to file an amended complaint on November 2, 2022 (Dkt.

21   # 28).  Having heard the arguments and reviewed the submissions of the parties and the

22   remainder of the record, the Court finds as follows:

23   **I.      Endangered Species Act Framework**

24   This case arises under the Endangered Species Act ("ESA").  The ESA is a federal statute

25   enacted to provide a program to conserve threatened and endangered species and to protect the

26   ecosystems upon which those species depend.  16 U.S.C. § 1531(b).  The U.S. Fish and Wildlife

27   Service ("FWS") and the National Marine Fisheries Service ("NMFS") share responsibility for

28   ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 1

administering the ESA.  50 C.F.R. § 402.01(b).[1]  Pursuant to Section 4 of the ESA, the FWS and the NMFS are empowered to designate species as "endangered"[2] or "threatened."[3]  Pursuant to Section 9 of the ESA, it is unlawful to "take"[4] an endangered species.  16 U.S.C. § 1538(a)(1)(B).  The regulations promulgated under the ESA extend this Section 9 protection to certain threatened species.  See 50 C.F.R. § 223.203(a); 50 C.F.R. § 17.31(a).

The ESA provides mechanisms that exempt certain takings of endangered or threatened species from Section 9 liability.  These mechanisms include ESA Section 10 and regulations promulgated under ESA Section 4(d).  Under Section 10, the FWS and NMFS may permit (1) acts "for scientific purposes or to enhance the propagation or survival of the affected species . . ." and (2) takings "incidental to, and not the purpose of, the carrying out of an otherwise lawful activity."  16 U.S.C. § 1539(a)(1).  Regulations promulgated under Section 4(d) of the ESA provide take prohibition exemptions for (1) artificial propagation programs for which a state or federal Hatchery and Genetics Management Plan ("HGMP") meeting delineated criteria has been approved by the NMFS, 50 C.F.R. § 223.203(b)(5), and (2) actions undertaken in compliance with a resource management plan jointly developed by the States of Washington, Oregon and/or Idaho and the tribes meeting delineated criteria, id. § 223.203(b)(6), among

---

[1] The NMFS has jurisdiction over marine and anadromous species, and the FWS has jurisdiction over terrestrial and freshwater species.  See 50 C.F.R. §§ 17.11, 223.102, 224.101.

[2] "Endangered species" means "any species which is in danger of extinction throughout all or a significant portion of its range other than a species of the Class Insecta determined by the Secretary to constitute a pest whose protection under the provisions of this chapter would present an overwhelming and overriding risk to man."  16 U.S.C. § 1532(6).

[3] "Threatened species" means "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."  16 U.S.C. § 1532(20).

[4] "Take" means "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct."  16 U.S.C. § 1532(19).  In turn, "harm" means "an act which actually kills or injures fish or wildlife.  Such an act may include significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including, breeding, spawning, rearing, migrating, feeding or sheltering."  50 C.F.R. § 222.102.

ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 2

1   others.[5]  These Section 4(d) regulatory exemptions are known as "Limit 5" and "Limit 6,"

2   respectively.

3          When non-federal actors seek a Limit 5 or Limit 6 exemption, they invoke the FWS or

4   NMFS's duty to consult under Section 7 of the ESA.  Section 7 requires federal agencies to

5   "insure that any action authorized, funded, or carried out by such agency . . . is not likely to

6   jeopardize the continued existence of any endangered species or threatened species or result in

7   the destruction or adverse modification of habitat of such species which is determined by the

8   Secretary, after consultation as appropriate with affected States, to be critical . . ."  16 U.S.C.

9   § 1536(a)(2).  Section 7 provides a three-step process:

10                 (1) An agency proposing to take an action must inquire of the [FWS
                   or NMFS] whether any threatened or endangered species "may be present"
11                 in the area of the proposed action.  See 16 U.S.C. § 1536(c)(1).

12                 (2) If the answer is affirmative, the agency must prepare a
                   "biological assessment" to determine whether such species "is likely to be
13                 affected" by the action.  Id.  The biological assessment may be part of an
                   environmental impact statement or environmental assessment.  Id.
14
                   (3) If the assessment determines that a threatened or endangered
15                 species "is likely to be affected," the agency must formally consult with the
                   [FWS or NMFS].  Id. § 1536(a)(2).  The formal consultation results in a
16

17

18          [5] The applicable regulation, 50 C.F.R. § 223.203(b), applies to steelhead and Chinook salmon.  It
     does not, however, apply to bull trout.  See 50 C.F.R. § 223.203(b) ("The limits to the prohibitions of
19   paragraph (a) of this section relating to threatened West Coast salmon ESUs and steelhead DPSs (of the
     genus Oncorhynchus) listed in § 223.102 are described in the following paragraphs.")  50 C.F.R. § 17.32
20   provides the general permitting rules applicable to bull trout, and 50 C.F.R. § 17.44(w) provides special
     rules applicable to bull trout.  See 50 C.F.R. § 17.32 ("Upon receipt of a complete application the
21   Director may issue a permit for any activity otherwise prohibited with regard to threatened wildlife.");
     see also 50 C.F.R. § 17.44(w)(2) ("In the following instances you may take this species in accordance
22   with applicable State, National Park Service, and Native American Tribal fish and wildlife conservation
     laws and regulations, as constituted in all respects relevant to protection of bull trout in effect on
23   November 1, 1999: (i) Educational purposes, scientific purposes, the enhancement of propagation or
     survival of the species, zoological exhibition, and other conservation purposes consistent with the Act;
24   or (ii) Fishing activities authorized under State, National Park Service, or Native American Tribal laws
     and regulations.").
25
            Neither party raises this discrepancy.  The Court declines to consider any differentiation under
26   the regulations, as it is undisputed that appropriate permits and exemptions have been obtained.

27

28   ORDER GRANTING MOTION TO DISMISS AND
     GRANTING MOTION FOR LEAVE TO AMEND
     AND SUPPLEMENT COMPLAINT - 3

> "biological opinion" issued by the [FWS or NMFS].  See id. § 1536(b).  If the biological opinion concludes that the proposed action would jeopardize the species or destroy or adversely modify critical habitat, see id. § 1536(a)(2), then the action may not go forward unless the [FWS or NMFS] can suggest an alternative that avoids such jeopardization, destruction, or adverse modification.  Id. § 1536(b)(3)(A).  If the opinion concludes that the action will not violate the [ESA], the [FWS or NMFS] may still require measures to minimize its impact.  Id. § 1536(b)(4)(ii)-(iii).

Thomas v. Peterson, 753 F.2d 754, 763 (9th Cir. 1985); see also 50 C.F.R. § 402, subpart B (consultation procedures).

Section 11 of the ESA provides a "citizen suit" provision.  Pursuant to this provision, "any person may commence a civil suit on his own behalf" "to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of [the ESA] or regulation issued under the authority thereof," among other suit authorizations.  16 U.S.C. § 1540(g)(1)(A).  However, no action may be commenced under this provision "prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation," among other limitations.  Id. § 1540(g)(2)(A)(i).  The ESA's citizen suit provision imbues the district courts with the jurisdiction to "enforce any such provision or regulation."  Id. at § 1540(g)(1).

## II.    Background

Plaintiff is a nonprofit organization dedicated to the preservation and recovery of Washington's native fish species and the ecosystems upon which those species depend.  Dkt. # 1 at ¶ 11.  Defendants are a Washington State agency that implements fish hatchery programs in the state and its commissioners.  Id. at ¶¶ 16-18.

Plaintiff brings this action under the citizen suit provision of the ESA.  This is not the first time that plaintiff has sued defendants under the citizen suit provision of the ESA.  Plaintiff first filed ESA citizen suits in 2002 and 2003 alleging that defendants failed to obtain ESA reviews or approvals for its Puget Sound hatcheries.  See Wild Puget Sound, et al v. Koenings, et al, No. C02-1852-RSL (W.D. Wash.); Threatened Puget, et al v. Koenings, et al, No. C03-

ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 4

1    687-RSL (W.D. Wash.); <u>see also</u> Dkt. # 18-2 at ¶ A.  The parties resolved those suits through a

2    2003 settlement agreement that required defendants to work to secure ESA reviews and

3    approvals and prohibited plaintiff from initiating litigation against defendants for its hatchery

4    programs for ten years.  <u>See</u> <u>Wild Puget Sound</u>, No. C02-1852-RSL at Dkt. # 37 (W.D. Wash.

5    May 15, 2003); <u>Threatened Puget</u>, No. C03-687-RSL at Dkt. # 18 (W.D. Wash. May 15, 2003);

6    <u>see also</u> Dkt. # 18-2 at 4-17.  Plaintiff sued defendants again in 2014 and 2019, this time in

7    relation to ten additional hatchery programs.  <u>See</u> <u>Wild Fish Conservancy v. Anderson et al</u>,

8    C14-465-JLR (W.D. Wash.); <u>Wild Fish Conservancy v. Washington Department of Fish &</u>

9    <u>Wildlife et al</u>, C19-612-JLR (W.D. Wash.); <u>see also</u> Dkt. # 18-2 at ¶¶ B-C.  The parties resolved

10   both suits through consent decrees that imposed various restrictions on defendants' hatchery

11   programs.  <u>See</u> <u>Wild Fish Conservancy</u>, C14-465-JLR at Dkt. # 22 (W.D. Wash. Apr. 28, 2014);

12   <u>Wild Fish Conservancy v. Washington Department of Fish & Wildlife et al</u>, C19-612-JLR at

13   Dkt. # 7 (W.D. Wash. May 2, 2019); <u>see also</u> Dkt. # 18-2 at 22-33, 35-45.

14          At issue here is defendants' integrated summer steelhead hatchery program on the South

15   Fork of the Skykomish River in Snohomish County, Washington (the "Skykomish Program").

16   Defendants commenced the Skykomish Program prior to the NMFS reviewing and approving

17   the HGMP and prior to the NMFS or FWS providing an authorization for defendants to take

18   ESA-listed species.  <u>See</u> Dkt. # 16 at 2.  Plaintiff alleges that the Skykomish Program causes

19   take of threatened fish species in violation of Section 9 of the ESA.  In particular, plaintiff

20   alleges that the Skykomish Program causes take of the Puget Sound distinct population segment

21   ("DPS") of steelhead, the Puget Sound evolutionary significant unit ("ESU") of Chinook

22   salmon, and the coterminous U.S. bull trout.  <u>See</u> Dkt. # 1 at ¶ 57.  Such steelhead, Chinook

23   salmon, and bull trout are listed as threatened species under the ESA, <u>see</u> 50 C.F.R. §§ 17.11(h),

24   223.102, and are among the threatened fish protected by the ESA's anti-take provision, <u>see</u>

25   50 C.F.R. §§ 17.31(a), 223.203(a).  Plaintiff further alleges that defendants are engaged in a

26   pattern and practice of implementing hatchery programs throughout the State of Washington that

27

28   ORDER GRANTING MOTION TO DISMISS AND
     GRANTING MOTION FOR LEAVE TO AMEND
     AND SUPPLEMENT COMPLAINT - 5

1  take ESA-listed species without ESA authorizations in violation of Section 9 of the ESA.  Dkt.
2  # 1 at ¶¶ 72-74.

3  Defendants submitted an HGMP to the NMFS dated April 12, 2019, pursuant to
4  regulations promulgated under Section 4 of the ESA.  Dkt. # 6 at 2.  Defendants also submitted a
5  request for the NMFS to issue a permit under Section 10 of the ESA for a trap and haul program
6  at Sunset Falls within the South Fork of the Skykomish River, whose activities included
7  collection of broodstock for the hatchery program.  Id.  These two applications sought
8  exemptions and/or permits providing exemptions from liability under Section 9 of the ESA for
9  operations of the Skykomish Program.  Id.

10  On December 2, 2020, plaintiff mailed a notice of its intent to sue under the ESA to
11  defendants.  Dkt. # 1 at 21-28.  The notice focused on the Skykomish Program, but framed the
12  implementation of the Skykomish Program in the absence of ESA review or approval as part of
13  a "long and disconcerting pattern of the agency willing to violate the ESA's prohibition on
14  unauthorized 'take' of protected species when it comes to artificial fish propagation," and noted
15  that defendants "continue[] . . . operating numerous hatcheries without NMFS's authorization
16  and in violation of the ESA and, for many of the programs [defendants] ha[ve] not even
17  submitted the plan required for NMFS's review."  Id. at 23-24.  The notice alleged that
18  defendants were in violation of Section 9 of the ESA as follows:

19  WDFW is in violation of section 9 of the ESA, 16 U.S.C. § 1538, for
20  implementing and funding the new integrated South Fork Skykomish River
   summer steelhead program described in the HGMP.  As described above,
21  these programs cause take of ESA-listed Puget Sound steelhead, Puget
22  Sound Chinook salmon, and bull trout.  This take is not authorized or
   exempt from liability under section 9 of the ESA . . . The Conservancy
23  intends to sue WDFW for all take of ESA-listed salmonids resulting from
24  this new hatchery program.

25  . . . . [Hatchery Science Review Group gene flow recommendations]
26  and/or similar requirements, including requirements intended to reduce take
   of ESA-listed species through ecological interactions, would be imposed on
27  WDFW's new integrated South Fork Skykomish River summer steelhead

28  ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 6

program through any exemption from liability under section 9 of the ESA that may be granted, along with monitoring and evaluation requirements necessary to ensure compliance with such requirements.  It is unlikely that WDFW would be able to fully comply with these requirements and the hatchery program will contribute to the continued decline of ESA-listed salmonids.  And in any case, WDFW does not have such authorization now, and therefore their 2019 and 2020 take of unmarked and/or wild steelhead from the South Fork of the Skykomish and transfer to Reiter Ponds violated the ESA.

Accordingly, the Conservancy provides notice of its intent to sue WDFW to bring its new integrated South Fork Skykomish River summer steelhead program described in the HGMP into compliance with section 9 of the ESA.  This includes complete compliance with any exemption from ESA liability for take that may be lawfully issued in accordance with the requirements of the ESA, the National Environmental Policy Act, and any other applicable statutes and regulations.

Id. at 26-27.

After the passage of the statutorily mandated 60-day period, plaintiff filed the instant action on February 10, 2021.  See Dkt. # 1.

On March 5, 2021, at the request of the parties, the Court stayed proceedings to allow time for NMFS and FWS to issue decisions on whether to provide defendants' requested take exemptions/authorizations for the Skykomish Program.  See Dkt. # 7.  The Court's order also prohibited defendants from collecting steelhead to supply broodstock for the Skykomish Program and from releasing hatchery fish from the Skykomish Program until such time as both the NMFS and FWS had provided authorizations for the Skykomish Program to take ESA-listed species.  See id.

On April 23, 2021, defendants received a biological opinion ("BiOp") and incidental take statements ("ITS") from the NMFS that included exemptions from liability under Section 9 of the ESA for the Skykomish Program.  Dkt. # 14 at 2; see also NMFS, Endangered Species Act (ESA) Section 7(a)(2) Biological Opinion and Magnuson-Stevens Fishery Conservation and Management Act Essential Fish Habitat (EFH) Consultation (NMFS Consultation Number:

ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 7

1  WCRO-2019-04075), April 23, 2021 ("NMFS Consultation") (regarding steelhead and Chinook

2  salmon).[6]

3        On July 2, 2021, NMFS issued a letter of concurrence approving the HGMP for the

4  Skykomish Program and thereby exempted the steelhead and Chinook salmon operations of the

5  Skykomish Program from liability under Section 9 of the ESA so long as the Skykomish

6  Program complied with implementation terms and reporting requirements of the associated

7  BiOp.  Dkt. # 14 at 2; see also Dkt. # 22-1 (letter of concurrence).

8        On August 20, 2021, plaintiff served on defendants a supplemental 60-day notice of

9  intent to sue under the ESA.  Dkt. # 14 at 3; see also Dkt. # 18-1 at 46-57 (supplemental notice).

10  Regarding the Skykomish Program, the supplemental notice asserted:

11          WDFW began the Skykomish Program, including taking listed broodstock,
   prior to having ESA authorization and in advance of the proposed program
12          undergoing technical review by the federal regulators charged with
   upholding the ESA.  Only after the Skykomish Program was well
13          underway, and effectively a foregone conclusion, was it reviewed and
   authorized by NMFS and FWS.  This violates the intent of ESA review and
14          approval of proposals which may impact listed species – to prohibit
   proposed programs which are too impactful, or to iteratively improve
15          proposals via feedback from the services to further minimize negative
   impacts to listed populations.
16

17

18

19

20  _____

21     [6] The parties' joint status report states that defendants received BiOps from both NMFS and
   FWS including exemptions from liability under ESA Section 9.  See Dkt. # 14 at 2.  Defendants'
22  declaration of Joseph Coutu indicates that defendants and the Tulalip Tribes received the FWS BiOp and
   ITS on April 12, 2021.  See Dkt. # 22 at ¶ 4.  However, defendants did not provide a citation to the FWS
23  report sufficient to allow the Court to review the document.  In contrast, defendants' declaration of
   James Scott provides a viable citation to the NMFS Consultation, which covers only the steelhead and
24  Chinook salmon at issue.  See Dkt. # 17 at 12, 15, 17, 19.  The NMFS Consultation indicates that the
   FWS, as the agency responsible for administering bull trout, would issue a separate ESA Section 7
25  consultation regarding bull trout.  See NMFS Consultation, p. 20.  Nonetheless, it is undisputed that
   defendants obtained exemptions from liability under ESA Section 9 for the Skykomish Program, and
26  plaintiff does not suggest that defendants failed to obtain exemptions regarding bull trout.  See Dkt. # 16
   at 2.
27

28  ORDER GRANTING MOTION TO DISMISS AND
   GRANTING MOTION FOR LEAVE TO AMEND
   AND SUPPLEMENT COMPLAINT - 8

1   Dkt. # 18-1 at 47.  The supplemental notice also asserted that "WDFW has and continues to

2   engage in a pattern of operating and implementing hatchery programs without ESA

3   authorizations or approvals, and approvals being issued only following the initiation of

4   litigation."  Id.  To this end, the supplemental notice provided notice of ESA Section 9

5   violations for causing take of ESA-listed species prior to obtaining ESA authorization or

6   exemption from Section 9 liability for the following fourteen programs: (1) Whatcom Creek

7   (Fall Chinook), (2) Hupp Springs (Spring Chinook), (3) Kendall Creek North Fork Nooksack

8   (Spring Chinook), (4) Samish (Fall Chinook), (5) Deep River Net Pen (SAFE) (Coho),

9   (6) Lewis River (Coho), (7) Lewis River (Coho (type S)), (8) Lewis River (I-205 wild) (Fall

10  Chum), (9) Lewis River (Speelyai) (Spring Chinook), (10) Chambers Creek (Fall Chinook),

11  (11) George Adams (Fall Chinook), (12) Tumwater Falls (Fall Chinook), (13) Cowlitz (Spring

12  Chinook), and (14) Cowlitz (Lower + Mayfield NP) (Fall Chinook).  Id. at 48-52, 55.

13          On September 9, 2021, defendants filed the motion to dismiss presently before the Court.

14  Dkt. # 16.

15          On September 16, 2021, plaintiff filed the motion for leave to file the first amended and

16  supplemental complaint presently before the Court.  Dkt. # 18.  Plaintiff's motion included the

17  proposed amended and supplemental complaint.  The proposed amended and supplemental

18  complaint increases focus on defendants' pattern of implementing hatchery programs that harm

19  threatened salmonids prior to obtaining ESA reviews and approvals, includes alleged ESA

20  Section 9 violations for all of the hatcheries named in the supplemental notice except for the

21  Deep River Net Pen program,[7] and alleges that the Skykomish Program violated Section 9 of the

22  ESA prior to obtaining ESA authorizations and exemptions and "will continue to violate

23  section 9 of the ESA, 16 U.S.C. § 1538, unless WDFW fully complies with NMFS's and FWS's

24  BiOp and ITS for the hatchery program and with the provisions of the HGMP and NMFS's

25  approval of the HGMP."  Dkt. # 18-1 at ¶ 81; see generally Dkt. # 18-1.  The proposed amended

26

27          [7] The Deep River Net Pen program obtained an exemption from take a few months before
    plaintiff issued its supplemental notice letter.  See Dkt. # 19 at 2 n.2.

28  ORDER GRANTING MOTION TO DISMISS AND
    GRANTING MOTION FOR LEAVE TO AMEND
    AND SUPPLEMENT COMPLAINT - 9

1   and supplemental complaint asks the Court to (1) issue a declaratory judgment declaring that
2   defendants are in violation of Section 9 of the ESA and regulations promulgated under
3   Section 4(d) of the ESA for causing take of ESA-listed salmonids through the implementation
4   and funding of defendants' hatchery programs, (2) issue a mandatory injunction requiring
5   defendants to comply with the ESA, (3) enjoin defendants from implementing and funding
6   hatchery programs unless and until compliance with the ESA is obtained, (4) grant certain
7   preliminary, permanent declaratory, and/or injunctive relief as is warranted to ensure
8   defendants' violations of the ESA do not continue to recur, (5) award plaintiff attorney's fees,
9   and (6) grant such additional relief as the Court deems just and proper. Id. at 29, ¶¶ A-F.

10   **III.   Motion to Dismiss**

11         Defendants move the Court to dismiss plaintiff's claims under Rule 12(b)(1) for lack of
12   subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be
13   granted.  The Court finds that plaintiff's claim that defendants were violating Section 9 by
14   operating the Skykomish Program without exemptions is moot, as defendants have now
15   obtained exemptions.  The Court finds that plaintiff's remaining claim – that the Skykomish
16   Program is causing unlawful take regardless of its exemptions – fails to state a claim upon which
17   relief can be granted.  We address the moot claim first.

18   **A. Claim that Skykomish Program Violated Section 9 by Operating Without**
19   **Exemptions**

20         Rule 12(b)(1) authorizes a motion for dismissal based on a lack of subject-matter
21   jurisdiction.  When a court lacks subject-matter jurisdiction, it lacks the power to proceed, and
22   its only remaining function is to dismiss.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83,
23   94 (1998).  "A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of
24   the pleadings or by presenting extrinsic evidence."  Warren v. Fox Family Worldwide, Inc., 328
25   F.3d 1136, 1139 (9th Cir. 2003) (citing White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)).  "In
26   a facial attack, the challenger asserts that the allegations contained in a complaint are
27   insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the

28   ORDER GRANTING MOTION TO DISMISS AND
     GRANTING MOTION FOR LEAVE TO AMEND
     AND SUPPLEMENT COMPLAINT - 10

1   challenger disputes the truth of the allegations that, by themselves, would otherwise invoke

2   federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

3   Here, defendants bring a factual attack, asserting that the allegations that they are operating the

4   Skykomish Program without an exemption from ESA Section 9 liability are false because they

5   obtained exemptions after plaintiff filed the complaint.  Therefore, they argue, the case is moot.

6          If the case is moot, the Court lacks subject-matter jurisdiction.  Article III of the U.S.

7   Constitution limits the federal courts' jurisdiction to actual cases or controversies, Am. Rivers v.

8   Nat'l Marine Fisheries Serv., 126 F.3d 1118, 1123 (9th Cir. 1997), as amended (Sept. 16, 1997),

9   and "prohibits federal courts from taking further action on the merits in moot cases," Env't Prot.

10  Info. Ctr., Inc. v. Pac. Lumber Co., 257 F.3d 1071, 1076 (9th Cir. 2001).  Whenever a case loses

11  its character as a present, live controversy, it is moot.  Am. Rivers, 126 F.3d at 1123.  "[A]n

12  actual controversy must be extant at all stages of review, not merely at the time the complaint is

13  filed."  Ctr. for Biological Diversity v. Marina Point Dev. Co., 566 F.3d 794, 804 (9th Cir. 2009)

14  (citations omitted).  "The party asserting mootness bears a 'heavy' burden; a case is not moot if

15  any effective relief may be granted."  Karuk Tribe of Cal. v. U.S. Forest Serv., 681 F.3d 1006,

16  1017 (9th Cir. 2012) (citation omitted).  Declaring an issue moot "is justified only when it is

17  'absolutely clear' that the litigant no longer has 'any need of the judicial protection that it

18  sought.'"  Id. (citing Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 224 (2000) (per

19  curiam)).

20         Defendants argue that plaintiff's claims are moot because defendants have now obtained

21  exemptions from ESA Section 9 liability for operation of the Skykomish Program.  While the

22  Ninth Circuit has addressed related questions,[8] it has not issued a published opinion resolving

23

24         [8] For example, the Ninth Circuit has ruled (1) that when one BiOps supersedes another, a
    challenge to the superseded BiOps is moot, Forest Guardians v. U.S. Forest Serv., 329 F.3d 1089, 1096

25  (9th Cir. 2003) (citing Am. Rivers, 126 F.3d at 1123-24); (2) that claims seeking reconsultation under
    the ESA are moot upon completion of reconsultation, see, e.g. All. for the Wild Rockies v. Savage, 897

26  F.3d 1025, 1031 (9th Cir. 2018); cf. Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt., 36 F.4th 850,

27  884-85 (9th Cir. 2022) (holding that, because consultation with the FWS was still ongoing, the court had
    jurisdiction over a claim that an agency failed to consult before acting); and (3) that suits seeking to

28  ORDER GRANTING MOTION TO DISMISS AND
    GRANTING MOTION FOR LEAVE TO AMEND
    AND SUPPLEMENT COMPLAINT - 11

1    whether an interceding exemption moots a citizen suit claiming unlawful take under Section 9 of

2    the ESA.  The only Ninth Circuit caselaw addressing this question of which this Court is aware

3    is the memorandum disposition issued in Wild Fish Conservancy v. Nat'l Park Serv., 687 F.

4    App'x 554 (9th Cir. 2017), which affirmed the district court's ruling in Wild Fish Conservancy

5    v. Nat'l Park Serv., No. C12-5109 BHS, 2013 WL 549756, at *2 (W.D. Wash. Feb. 12, 2013).

6    The Ninth Circuit's explanation of its reasoning, however, was minimal.  The Ninth Circuit

7    ruled as follows:

> The district court correctly found the Conservancy's initial claim that the
> Tribe was taking fish without authorization moot in light of NMFS's
> Limit 6 approval and Incidental Take Statement.  See Am. Rivers v. Nat'l
> Marine Fisheries Serv., 126 F.3d 1118, 1123 (9th Cir. 1997) ("If an event
> occurs that prevents the court from granting effective relief, the claim is
> moot and must be dismissed.").  The district court also correctly found that
> any claim against the Tribe for taking in violation of NMFS's authorization
> was barred for lack of notice.  16 U.S.C. § 1540(g)(2)(A)(i); see Sw. Ctr.
> for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 522
> (9th Cir. 1998) (holding that citizen-plaintiff must "provide sufficient
> information of a violation so that the [defendant] could identify and attempt
> to abate the violation").

16

17   Wild Fish Conservancy, 687 F. App'x at 558.  While the Court is not bound by this unpublished

18   decision or the district court ruling it affirmed, it looks to both as persuasive precedent.

19        In light of the caselaw discussed above, the Court concludes that it can no longer grant

20   meaningful relief on plaintiff's claims grounded in the allegation that the Skykomish Program is

21

22

23   reinitiate ESA consultation are moot upon reinitiation of consultation, see, e.g., All. for the Wild
     Rockies v. U.S. Forest Serv., 907 F.3d 1105, 1121 (9th Cir. 2018); All. for the Wild Rockies v. U.S.

24   Dep't of Agric., 772 F.3d 592, 601 (9th Cir. 2014); but see Forest Guardians v. Johanns, 450 F.3d 455,
     462 (9th Cir. 2006) (holding that reinitiation claim was not moot where the grazing permit at issue

25   "requires that the Forest Service obtain from FWS annual concurrence that the guidance criteria

26   governing the 'not likely to adversely affect' finding have been met," and "the Forest Service's practice
     of not complying with the monitoring requirements is likely to persist despite the recent re-

27   consultation").

28   ORDER GRANTING MOTION TO DISMISS AND
     GRANTING MOTION FOR LEAVE TO AMEND
     AND SUPPLEMENT COMPLAINT - 12

1   unlawfully taking ESA-listed species without an exemption from ESA Section 9 liability.[9]   The

2   Court cannot order defendants to seek an exemption because defendants have already obtained

3   an exemption.   Cf. Friends of the Earth, Inc. v. Bergland, 576 F.2d 1377, 1379 (9th Cir. 1978)

4   ("Where the activities sought to be enjoined have already occurred, and the appellate courts

5   cannot undo what has already been done, the action is moot.").   Any other relief would serve no

6   purpose because plaintiff's core objective has been met.   Cf. Ctr. for Biological Diversity v.

7   Lohn, 511 F.3d 960, 964 (9th Cir. 2007) ("[D]eclaring the DPS Policy unlawful would serve no

8   purpose in this case because the Service has listed the Southern Resident as an endangered

9   species, the Center's ultimate objective.   That the DPS Policy might adversely affect the

10   Southern Resident's endangered species status or the Service's listing determination of certain

11   other killer whale populations at some indeterminate time in the future is too remote and too

12   speculative a consideration to save this case from mootness.").   These claims are accordingly

13   moot.

14        Plaintiff argues that the claims are not moot because: (A) obtaining the exemption is

15   insufficient to moot the case, (B) defendants' continuing practice and history of violating the

16   ESA means that meaningful relief remains available, (C) this case falls within the voluntary

17   cessation exception to the mootness doctrine because defendants ceased operating the

18   Skykomish Program while obtaining the exemption, and (D) further development of the facts is

19   necessary before the Court can rule on mootness.   While plaintiff's arguments are well reasoned,

20   the Court is ultimately not persuaded.   The Court considers each argument in turn.

21

22        [9] While the Court recognizes that plaintiff generally couched its request for relief in generic
terms, perhaps in an attempt to avoid mootness in the event that defendants obtained an exemption

23   during the pendency of this litigation, plaintiff's request for relief nonetheless relies on the assertion that
the Skykomish Program was operating without the permit.   See Dkt. # 1 at 19, ¶ A (Plaintiff requests

24   that the Court "[i]ssue a declaratory judgment declaring that WDFW is in violation of section 9 of
the ESA and regulations promulgated under section 4(d) of the ESA for causing 'take' of threatened Puget

25   Sound steelhead, threatened Puget Sound Chinook salmon, and threatened bull trout *through the*

26   *implementation and funding of the **unreviewed and unpermitted** South Fork Skykomish River summer*
*steelhead program*") (emphasis added).   The Court discusses below why plaintiff's claims regarding

27   post-exemption unlawful take must also be dismissed.

28   ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 13

1    **1. Exemption**

2    Plaintiff argues that obtaining an exemption cannot moot the case because an ESA

3  exemption is merely an affirmative defense.  See Dkt. # 20 at 16-18, 20-21.  Under Rule 4(d),

4  NMFS' approval of a plan provides an "affirmative defense" against allegations of unlawful

5  take that "must be raised, pleaded, and proven by the proponent."  50 C.F.R. § 223.203(c).[10]

6  Plaintiff contends that because its complaint alleged that the Skykomish program was causing

7  unlawful take (not only that it was operating without an exemption), the issuance of an

8  exemption means only that defendants now have an affirmative defense available.  See Dkt. # 20

9  at 17.  Plaintiff further argues that as a result, the case cannot be moot as defendants have made

10  no effort to prove compliance with the exemptions or establish that they "have completely or

11  irrevocably eradicated the effects of the alleged violation."  Dkt. # 20 at 18 (quoting Chang v.

12  United States, 327 F.3d 911, 918 (9th Cir. 2003)).

13    The case on which Plaintiffs rely for the proposition that defendants bear the burden of

14  proving compliance with exemptions, United States v. Charette, is inapposite.  893 F.3d 1169,

15  1174 (9th Cir. 2018).  That case held that a private party being prosecuted for "take" of an

16  endangered species in violation of the ESA bears the burden of proving he or she had a valid

17  take permit as an affirmative defense *in a criminal action.*  Id.; see also Nw. Env't Def. Ctr. v.

18  U.S. Army Corps of Eng'rs, 479 F.Supp.3d 1003, 1021 n.8 (D. Or. 2020).  Furthermore, review

19  of the relevant statutory text reveals the affirmative defense arises only after an exemption has

20  been issued:

21      In connection with any action alleging a violation of section 1538 of this
22      title, any person claiming the benefit of any exemption or permit under this
23      chapter shall have the burden of proving that the exemption or permit is

24

25    [10] As plaintiff notes, a BiOp and ITS issued under section 7 can similarly function as a permit
26  authorizing take, and also provides an "affirmative defense against a claim alleging take in violation of
   the ESA."  See Dkt. # 20 at 11 (citing 16 U.S.C. §§ 1536(o)(2), 1539(g); H.R. Rep. No. 94-823, at 6
27  (1976)).

28  ORDER GRANTING MOTION TO DISMISS AND
   GRANTING MOTION FOR LEAVE TO AMEND
   AND SUPPLEMENT COMPLAINT - 14

1   |   applicable, has been granted, and **was valid and in force at the time of the**
2   |   **alleged violation**.

3   16 U.S.C. § 1539(g) (emphasis added).  A common sense reading of the statute compels the

4   conclusion that now that exemptions have been issued for the Skykomish Program, defendants

5   will have an affirmative defense to allegations of unlawful take.  Specifically, they will have an

6   "absolute defense" to liability under Section 9 as long as they can demonstrate complete

7   compliance with the terms of the exemption.  See 50 C.F.R. § 223.203(c).  However, where the

8   allegation against defendant is specifically that it is causing take by operating without

9   authorization, the affirmative defense cannot be available as the very allegation at issue is that

10  no permit or exemption "has been granted."  16 U.S.C. § 1539(g).

11          Plaintiff's attempt to invoke the affirmative defense to stave off mootness construes the

12  issue too broadly.  The Court does not find plaintiff's overarching claim that defendant is

13  violating Section 9 moot.  It simply finds plaintiff's claim that defendants were taking fish

14  without authorization is moot, as defendants have now obtained the relevant exemptions.

15          Plaintiff argues against this conclusion, citing Native Fish Soc'y v. Nat'l Marine

16  Fisheries Serv., No. C12-431-HA, 2013 WL 12120102 (D. Or. May 16, 2013), and Strahan v.

17  Roughead, 910 F.Supp.2d 358, 377-78 (D. Mass. 2012).  However, neither opinion is binding on

18  this Court, and both cases dealt with whether plaintiff's overall Section 9 claims were mooted by

19  the issuance of exemptions in contrast to the more specific question we address here.  Native

20  Fish Soc'y, 2013 WL 12120102, at *9; Strahan, 910 F.Supp.2d at 374.

21          Indeed, the court in Native Fish Soc'y explicitly acknowledged that it had "no trouble in

22  conceiving of a situation in which the issuance of an ITS would moot a plaintiff's claims or

23  allegations [of section 9 violations]."   2013 WL 12120102, at *9 n.6.  Other district courts in

24  this circuit have similarly concluded that "case law confirms that issuance of [an agency

25  exemption] moots ESA Section 9 claims."   Oregon Wild v. Connor, No. C9-185-AA, 2012 WL

26  3756327, at *2 (D. Or. Aug. 27, 2012) (collecting cases); see also All. for Wild Rockies v.

27  Burman, 499 F.Supp.3d 786, 794 (D. Mont. 2020) (concluding that where "incidental take of

28  ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 15

1  bull trout has been authorized by the ITS . . . [plaintiff] has achieved its relief sought and the

2  Section 9 claim is moot."); Wild Equity Inst. v. City and Cnty. of S.F., No. C11-958-SI, 2012

3  WL 6082665, *3 (N.D. Cal. Dec. 6, 2012) (finding that "[t]he ITS now authorizes take of the

4  Frog and the Snake . . . [i]f the City fails to abide by the terms of the ITS, then plaintiffs will

5  have a new cause of action, but until then the City is shielded from liability."); Wild Fish

6  Conservancy, 2013 WL 549756, at *2.

7         **2. Relief Available**

8        Plaintiff next argues that defendants' continuing practice and history of violating the ESA

9  means that meaningful relief remains available.  "A case becomes moot only when it is

10  impossible for a court to grant any effectual relief whatever to the prevailing party."  Knox v.

11  Serv. Emps. Int'l Union, Loc. 1000, 567 U.S. 298, 307 (2012) (citing City of Erie v. Pap's A.M.,

12  529 U.S. 277, 287 (2000)) (internal punctuation omitted).  With regards to the Skykomish

13  Program, the Court disagrees that relief remains available.  As discussed above, the Skykomish

14  Program has already obtained its exemptions, and the Court is therefore unable to grant

15  meaningful injunctive relief.

16        Declaratory relief is also inappropriate.  Plaintiff argues that declaratory judgment would

17  provide effective relief because it would guide defendants' future implementation and operation

18  of many hatchery programs that do not have ESA approvals and would ensure that defendants

19  do not continue their unlawful practices.  See Dkt. # 20 at 22.  The cases that plaintiff relies

20  upon, Johanns and Tidwell, are distinguishable.  In Johanns, the specific grazing permit at issue

21  required the Forest Service to obtain annual concurrence from the FWS.  The Ninth Circuit

22  reasoned that declaratory relief was appropriate because "a declaratory judgment that the Forest

23  Service's actions relating to Water Canyon violated the ESA would provide effective relief by

24  governing the Forest Service's actions *for the remainder of the allotment's permit term* and by

25  prohibiting it from continuing to violate the law."  Johanns, 450 F.3d at 462-63 (emphasis

26  added).  A declaratory judgment regarding a specific permit is much narrower in scope than a

27  declaratory judgment regarding defendants' entire hatchery program.  Tidwell, as a decision of

28  ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 16

1   the U.S. District Court for the District of Oregon, is not binding on this Court.  Nonetheless, it is

2   likewise distinguishable on the ground of scope.  There, the plaintiffs' claims went to the NMFS

3   and Forest Service's management of grazing permits in the Malheur National Forest.  Oregon

4   Nat. Desert Ass'n v. Tidwell, 716 F. Supp. 2d 982, 989 (D. Or. 2010).  The court found that the

5   defendants had not carried their heavy burden of establishing that the court could provide no

6   effective relief for the violations alleged because the grazing activities continued to be managed

7   under the same BiOp "and declaratory judgment that the Forest Service violated the ESA by

8   failing to timely reinitiate formal consultation could provide effective relief."  Id. at 994-95.

9   Unlike the plaintiffs in Johanns and Tidwell, plaintiff does not assert it requires declaratory

10  relief regarding the specific program at issue – the Skykomish Program – but rather indicates

11  that declaratory relief could guide defendants' other hatchery programs.  See Dkt. # 20 at 22-23.

12  This argument does not save plaintiff's initial claims from mootness.

13          **3. Voluntary Cessation**

14          Third, plaintiff argues that this case falls within the voluntary cessation exception to the

15  mootness doctrine because defendants ceased operating the Skykomish Program while obtaining

16  the exemption.  "It is well settled that 'a defendant's voluntary cessation of a challenged practice

17  does not deprive a federal court of its power to determine the legality of the practice.'"  Friends

18  of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (quoting City

19  of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)).  Plaintiff's argument fails

20  because while it is true that defendants voluntarily ceased operating the Skykomish Program

21  pending receipt of exemptions, see Dkt. # 7 (order granting parties' stipulated motion to cease

22  Skykomish Program operations pending obtaining ESA exemptions), the exemptions have now

23  been obtained.  "The ESA allows a citizen suit for the purpose of obtaining injunctive relief

24  only."  Marina Point Dev. Co., 566 F.3d at 804 (citing 16 U.S.C. § 1540(g)(1)(A)).  "Of course,

25  that is forward looking, and is intended to prevent a defendant from taking an endangered or

26  threatened species."  Id. (citing 16 U.S.C. § 1538(a)(1)(B); 50 C.F.R. § 17.31). Given that

27  defendants have now obtained exemptions for the Skykomish Program, it is irrelevant that

28  ORDER GRANTING MOTION TO DISMISS AND
    GRANTING MOTION FOR LEAVE TO AMEND
    AND SUPPLEMENT COMPLAINT - 17

1    defendants voluntarily ceased operations prior to obtaining these exemptions.  It would be

2    impossible for defendants to revert to operating the Skykomish Program *prior* to obtaining

3    exemptions, and the Court is constrained to granting forward-looking relief. [11]

4         Plaintiff also argues that defendant "has not demonstrated that its wrongful behavior is

5    not reasonably likely to recur at [other hatchery programs]."  Dkt. # 20 at 24.  However, this

6    argument impermissibly broadens the voluntary cessation exception.  Here, the "challenged

7    practice" that defendants voluntarily halted was the *operation of the Skykomish program* without

8    exemptions.  Defendants' alleged conduct at other hatcheries is not relevant to the voluntary

9    cessation inquiry.  Any claim that defendants are operating other hatcheries without ESA

10   exemptions "would constitute an entirely new violation subject to judicial review."  Burman,

11   499 F.Supp.3d at 794.

12                    **4. Evidentiary Hearing and Discovery**

13        Finally, plaintiff argues that further development of the facts is necessary before the

14   Court can rule on mootness.  "[D]iscovery should ordinarily be granted where pertinent facts

15   bearing on the question of jurisdiction are controverted or where a more satisfactory showing of

16   the facts is necessary."  Laub v. U.S. Dep't of Interior, 342 F.3d 1080, 1093 (9th Cir. 2003)

17   (quoting Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc., 788

18   F.2d 535, 540 (9th Cir. 1986)).  Plaintiff premises this argument on the idea that the Court must

19   determine whether the Skykomish Program complies with its exemptions from Section 9

20   liability prior to concluding plaintiff's claims are moot.  However, the only facts relevant to the

21

22        [11] Plaintiff's citation to Rosemere Neighborhood Ass'n v. EPA, 581 F.3d 1169 (9th Cir. 2009),
     does not change the result.  In Rosemere, the challenged conduct was the agency's failure to process
23   plaintiff's complaint within the regulatory deadlines.  581 F.3d at 1171-73.  The agency had voluntarily
     ceased the challenged behavior (refusing to process the complaint) by eventually processing plaintiff's
24   complaint after plaintiff had commenced legal action against the agency.  Id.  The court held that this
     conduct did not moot the case because it was likely that the plaintiff would file another complaint with
25   the agency, and again be subject to the agency's refusal to meet regulatory deadlines.  Id. at 73-76.
     Here, as discussed above, the "voluntarily ceased" behavior is operating the Skykomish program prior to
26   obtaining ESA exemptions, a behavior that cannot be repeated now that ESA exemptions have been
     obtained.
27

28   ORDER GRANTING MOTION TO DISMISS AND
     GRANTING MOTION FOR LEAVE TO AMEND
     AND SUPPLEMENT COMPLAINT - 18

1  Court's mootness inquiry – which, as discussed above, is focused exclusively on plaintiff's

2  claim that the Skykomish Program was operating without exemptions – are whether exemptions

3  have now been obtained.  Because the parties do not dispute that exemptions have been

4  obtained, see Dkt. 20 at 13, the Court declines to defer ruling on mootness.

5       **B. Claims That the Skykomish Program Is Causing Ongoing Unlawful Take**

6       Defendants also move to dismiss claims that the Skykomish Program is causing ongoing

7  unlawful take under Rule 12(b)(1) and Rule 12(b)(6).

8       **1. Lack of Jurisdiction**

9       Defendants argue that allegations of take beyond the bounds of the exemptions is not

10  concretely alleged in plaintiff's notice letter to defendants, and thus must be dismissed under

11  Rule 12(b)(1).  See Dkt. # 1 at 21-28.  The citizen suit provision of the ESA, under which

12  plaintiff brings the current action, is a supplementary enforcement mechanism.  See Gwaltney of

13  Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 60-62 (1987) (finding that "the

14  citizen suit is meant to supplement rather than to supplant governmental action").  One of the

15  limits imposed on these enforcement actions is a jurisdictional sixty-day notice period.  16

16  U.S.C. § 1540(g)(2)(A)(i); Sw. Ctr. for Biological Diversity, 143 F.3d at 520 (citing Save the

17  Yaak Comm. v. Block, 840 F.2d 714, 721 (9th Cir. 1988)).  The core purpose of the notice

18  requirement is to provide defendants with "an opportunity to review their actions and take

19  corrective measures if warranted," and offer "an opportunity for settlement or other resolution of

20  a dispute without litigation."  Id.  The notice must, "at a minimum provide sufficient

21  information so that the [notified parties] could identify and attempt to abate the

22  violation."  Animal Legal Def. Fund v. Olympic Game Farm, Inc., 951 F.Supp.3d 956, 967

23  (W.D. Wash. 2022) (quoting Sw. Ctr. For Biological Diversity, 143 F.3d at 522) (internal

24  punctuation omitted).  "A reviewing court may examine both the notice itself and the behavior

25  of its recipients to determine whether they understood or reasonably should have understood the

26  alleged violations."  Klamath-Siskiyou Wildlands Ctr. v. MacWhorter, 797 F.3d 645, 651 (9th

27  Cir. 2015). "[A] notice need not provide the exact details of the legal arguments that the

28  ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 19

1  plaintiffs intend to eventually make." Conservation Cong. v. Finley, 774 F.3d 611, 618 (9th Cir.

2  2014) (citing Marbled Murrelet v. Babbitt, 83 F.3d 1068, 1072-73 (9th Cir. 1996)).  The

3  question is "whether the notice provided information that allowed the defendant to identify and

4  address the alleged violations, considering the defendant's superior access to information about

5  its own activities." Klamath-Siskiyou, 797 F.3d at 651.

6          Here, the notice letter was issued before the exemptions were in place.  Thus, it would

7  have been impossible for plaintiff to specifically allege that defendants were exceeding the take

8  authorizations in the exemptions.  Defendants argue that as a result, notice was insufficient, and

9  the Court does not have jurisdiction over the claims.  However, the Ninth Circuit does not

10 require hyper technical specificity when reviewing citizen suit notices.  Here, plaintiff's notice

11 letter stated that there are "clear recommendations regarding the maximum acceptable level of

12 gene flow from integrated hatchery programs to wild conspecific populations and regarding the

13 introgression of natural origin fish into the broodstock along with hatchery-origin fish" and that

14 "it is unlikely that WDFW would be able to fully comply with these requirements."  Dkt. # 28-1

15 at 27.  Furthermore, the notice letter specified that plaintiff "provides notice of its intent to sue

16 WDWF to bring its . . . Skykomish [Program] . . . into compliance with section 9 of the ESA.

17 This includes complete compliance with any exemption from ESA liability for take that may be

18 lawfully issued . . . ." Id.  Thus, notice was sufficient to alert defendants that plaintiff would sue

19 due to a belief that the Skykomish Program was causing unlawful take, regardless of the

20 exemptions obtained.

21         **2. Failure to State a Claim**

22         Additionally, defendants argue that plaintiff's allegations that defendants are causing

23 unlawful take – despite their exemptions – must be dismissed for failure to state a claim upon

24 which relief can be granted.  Dkt. # 21 at 8, 11; Dkt. # 16 at 3, 5.  A claim is appropriately

25 dismissed pursuant to Rule 12(b)(6) if the claim "fail[s] to state a claim upon which relief can be

26 granted." Whitaker v. Tesla Motors, Inc., 985 F.3d 1173, 1175 (9th Cir. 2021) (quoting Fed. R.

27 Civ. P. 12(b)(6)).  The question for the Court is whether the facts alleged in the complaint

28 ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 20

1  sufficiently state a "plausible" ground for relief.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

2  (2007).  To survive dismissal, plaintiff must make a "short and plain statement of the claim"

3  from which the Court can draw the reasonable inference that the defendants are liable and that

4  the plaintiff is entitled to relief.  Fed. R. Civ. P. 8(a)(2); United States v. Corinthian Colls., 655

5  F.3d 984, 991 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); see also

6  Twombly, 550 U.S. at 570.  Plaintiff must plead sufficient facts "to raise a right to relief above a

7  speculative level," . . . "a formulaic recitation of the elements of a cause of action will not do."

8  Whitaker, 985 F.3d at 1176 (quoting Twombly, 550 U.S. at 555).  In the context of this motion,

9  the Court must "accept factual allegations in the complaint as true and construe the pleadings in

10  the light most favorable to the nonmoving party."  Manzarek v. St. Paul Fire & Marine Ins. Co.,

11  519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).  The Court's review is generally limited

12  to the contents of the complaint.  Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).

13      Here, plaintiff's claims of ongoing unlawful take are speculative.  The complaint states,

14  "Even if NMFS and/or FWS approve WDFW's HGMP or issue take statements or permits for

15  the new hatchery program, WDFW *will likely* remain in violation of section 9 of the ESA

16  because the South Fork Skykomish River summer steelhead program cannot satisfy the

17  requirements imposed by NMFS and/or FWS," Dkt. # 1 at ¶ 68 (emphasis added), and goes on

18  to state that "*it is unlikely that WDFW would be able* to fully comply with [future exemption-

19  imposed] requirements, and the hatchery program will contribute to the continued decline of

20  ESA-listed salmonids," id. at ¶ 71 (emphasis added).  To survive a motion to dismiss, plaintiff

21  must "raise a right to relief above a speculative level."  Whitaker, 985 F.3d at 1176 (quoting

22  Twombly, 550 U.S. at 555).  Here, plaintiff has not met this standard.  The complaint does not

23  allege facts that would entitle plaintiff to relief; it merely theorizes that such facts would likely

24  materialize.  Thus, the Court grants defendants' motion to dismiss for failure to state a claim as

25  to defendant's allegations of post-exemption take.

26      Plaintiff filed a motion to expand the factual record, seeking to introduce facts that would

27  establish defendants are violating the Skykomish Program's exemptions.  See Dkt. # 34.

28  ORDER GRANTING MOTION TO DISMISS AND
   GRANTING MOTION FOR LEAVE TO AMEND
   AND SUPPLEMENT COMPLAINT - 21

However, a motion to dismiss under Rule 12(b)(6) generally must rely solely on the contents of the pleadings. See Fed. R. Civ. P. 12(d). There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018). Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Incorporation by reference allows a court to consider documents "incorporated into the complaint by reference." J. K. J. v. City of San Diego, 42 F.4th 990, 997 (9th Cir. 2021) (quoting Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007)). Neither exception applies here. The relevant report was not relied upon (as it did not exist) when plaintiff filed its complaint. And, as plaintiff acknowledges, the facts it seeks to introduce in the motion to supplement demonstrate that there is "significant factual dispute." Dkt. # 34 at 7. Accordingly, the Court denies plaintiff's motion to supplement the record.[12]

In conclusion, to the extent that plaintiff's claims regarding the Skykomish Program go to pre-exemption unlawful take, they are moot. To the extent they go to post-exemption unlawful take, they fail to state a claim upon which relief can be granted. When amendment would be futile dismissal may be ordered with prejudice. See Dumas v. Kipp, 90 F.3d 386, 393 (9th Cir. 1996). Plaintiff's claims are therefore dismissed with prejudice with regard to the pre-exemption claims and without prejudice with regard to the post-exemption claims. Accordingly, plaintiff is free to incorporate its recent, more specific allegations against the Skykomish Program into its Amended Complaint.

---

[12] Plaintiff also filed a surreply moving the Court to strike materials filed with defendants' response regarding defendants' purported compliance with the ITS and approved HGMP. See Dkt. # 25. Because the Court concludes that such compliance is irrelevant to the motion to dismiss currently before the Court, it declines to consider such materials, and therefore need not rule on plaintiff's motion to strike.

ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 22

1    **IV.    Motion to Amend and Supplement Complaint**

2        Plaintiff moves the Court for leave to file a first amended and supplemental complaint

3    adding claims regarding a number of other hatchery programs.

4        Plaintiff seeks to amend the complaint to include alleged violations of ESA Section 9 that

5    occurred before the initial complaint was filed.  Plaintiff does not assert, nor could it, that it is

6    entitled to amend its pleadings as a matter of course.  See Fed. R. Civ. P. 15(a)(1).  Once the

7    time has passed for amending pleadings as a matter of course, Rule 15(a)(2) provides that the

8    Court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to

9    amend, however, "is not to be granted automatically."  In re W. States Wholesale Nat. Gas

10   Antitrust Litig., 715 F.3d 716, 738 (9th Cir. 2013), aff'd sub nom. Oneok, Inc. v. Learjet, Inc.,

11   575 U.S. 373 (2015) (quoting Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990)).

12   The Court considers the following five factors to assess whether to grant leave to amend:

13   "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment;

14   and (5) whether plaintiff has previously amended his complaint."  Id. (quoting Allen v. City of

15   Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990)).

16       Amendment here is proper.  There is no sign of bad faith.  Despite the passage of time,

17   this case is still in its infancy due to a stay entered on March 5, 2021, see Dkt. # 7, thus

18   minimizing prejudice to defendants.  Amendment does not appear to be futile because

19   amendment remedies the primary problem impacting the original complaint: mootness. Finally,

20   this is plaintiff's first request to amend the complaint, which favors permitting amendment here.

21   Defendants primarily argue that plaintiff should not be granted leave to amend because (1) the

22   new claims are not related to the Skykomish Program, and (2) plaintiff's knowledge of the

23   thirteen additional hatchery programs included in the proposed amended and supplemental

24   complaint is not new.  See Dkt. # 19 at 4-6.  Defendants, however, fail to tie these objections to

25   any of the factors that the Court considers when determining whether to grant leave to amend or

26   to cite any law in support of these positions.  See id.  To the extent that defendants argue that

27   plaintiff's original notice letter did not include the new claims, see id. at 4-5, the Court notes that

28   ORDER GRANTING MOTION TO DISMISS AND
     GRANTING MOTION FOR LEAVE TO AMEND
     AND SUPPLEMENT COMPLAINT - 23

1  plaintiff issued a supplemental notice letter on August 20, 2021.  See Dkt. # 18-1 at 46-57.  The

2  Court therefore grants plaintiff leave to amend the complaint.

3          Plaintiff also seeks to supplement the complaint to include alleged violations of Section 9

4  of the ESA that occurred after the initial complaint was filed.  Under Rule 15(d), "the court may

5  on just terms, permit a party to serve a supplemental pleading setting out any transaction,

6  occurrence, or event that happened after the date of the pleading to be supplemented.  The court

7  may permit supplementation even though the original pleading is defective in stating a claim or

8  defense." Fed. R. Civ. P. 15(d).  "Rule 15(d) permits the filing of a supplemental pleading

9  which introduces a cause of action not alleged in the original complaint and not in existence

10 when the original complaint was filed." Cabrera v. City of Huntington Park, 159 F.3d 374, 382

11 (9th Cir. 1998) (quoting United States v. Reiten, 313 F.2d 673, 674 (9th Cir. 1963)).  Leave to

12 permit supplemental pleading is "favored." Planned Parenthood of S. Ariz. v. Neely, 130 F.3d

13 400, 402 (9th Cir. 1997) (quoting Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988)).  Motions

14 to amend pursuant to Rule 15(d) should be granted "unless undue prejudice to the opposing

15 party will result." LaSalvia v. United Dairymen of Ariz., 804 F.2d 1113, 1119 (9th Cir. 1986)

16 (quoting Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973)).

17         Defendants argue that the Court should not grant leave to supplement because (1) leave to

18 permit supplemental pleading "cannot be used to introduce a 'separate, distinct and new cause of

19 action,'" Dkt. # 19 at 7 (quoting Planned Parenthood of S. Ariz., 130 F.3d at 402),

20 (2) supplementation can only be used to add claims that arise from facts which come into

21 existence after the filing of the current complaint, id. (citing Eid v. Alaska Airlines, Inc., 621

22 F.3d 858, 874 (9th Cir. 2010)), (3) the Court lacks jurisdiction because at the time plaintiff filed

23 its motion to amend and supplement the complaint, 60 days had not yet passed from its issuance

24 of the supplemental notice letter, id. at 7-8, (4) the nature of the relief that plaintiff may seek for

25 the new claims is different from any relief that it may try to seek for the Skykomish Program, id.

26 at 8-11, (5) the interests of parties unrelated to the Skykomish Program will need to be

27 considered, id. at 11-12, and (6) supplementation will complicate attorney's fee issues, id. at 12.

28 ORDER GRANTING MOTION TO DISMISS AND
   GRANTING MOTION FOR LEAVE TO AMEND
   AND SUPPLEMENT COMPLAINT - 24

1   The Court takes these as arguments that defendants would suffer undue prejudice from

2   supplementation of the complaint and considers each in turn.

3        First, while defendants argue that leave to permit supplemental pleading "cannot be used

4   to introduce a 'separate, distinct and new cause of action,'" Dkt. # 19 at 7 (quoting Planned

5   Parenthood of S. Ariz., 130 F.3d at 402), this is an incomplete recitation of the law.  In Cabrera,

6   the Ninth Circuit expanded on this rule, stating, "supplemental pleading cannot be used to

7   introduce a 'separate, distinct and new cause of action' *where the original action between the*

8   *parties has reached a final resolution and the district court does not retain jurisdiction*."

9   Cabrera, 159 F.3d at 382 n.11 (quoting Planned Parenthood of S. Ariz., 130 F.3d at 402)

10  (emphasis added).  This rule does not bar supplementation here because the Court

11  simultaneously considers defendants' motion to dismiss and plaintiff's motion to amend and

12  supplement the complaint, which were both noted for the same day, and thus has yet to enter a

13  final judgment.  Cf. Planned Parenthood of S. Ariz., 130 F.3d at 402 (holding that district court

14  lacked jurisdiction to grant plaintiffs' request to supplement their complaint where it had entered

15  final judgment four years prior).  Even taking defendants' statement of the law as correct, this

16  argument still fails.  In Keith, the Ninth Circuit explained that "[w]hile some relationship must

17  exist between the newly alleged matters and the subject of the original action, they need not all

18  arise out of the same transaction." Keith v. Volpe, 858 F.2d 467, 474 (9th Cir. 1988).  The new

19  claims need not address the Skykomish Program; it is sufficient that they are also ESA Section 9

20  claims regarding defendants' hatchery programs.

21       Second, the Court agrees that supplementation can only be used to add claims post-dating

22  the complaint.  See Fed. R. Civ. P. 15(d).  To the extent that plaintiff's new claims do not meet

23  this requirement, it is via plaintiff's tandem request for leave to *amend* that they are approved.

24       Third, defendants are correct that 60 days from the issuance of the supplemental notice

25  letter had not yet expired at the time that plaintiff filed its motion to amend and supplement the

26  complaint.  Dkt. # 19 at 7-8.  The 60-day notice period is jurisdictional.  See Sw. Ctr. for

27  Biological Diversity, 143 F.3d at 520.  Nonetheless, the 60-day notice period has now long-

28  ORDER GRANTING MOTION TO DISMISS AND
    GRANTING MOTION FOR LEAVE TO AMEND
    AND SUPPLEMENT COMPLAINT - 25

1   since expired, and it is measured against the date that the amended and supplemental complaint

2   is actually filed rather than the date that plaintiff requested leave from the Court.  See U.S. Dep't

3   of Agric., 772 F.3d at 601-04.  This argument therefore fails.

4         Addressing defendants' fourth and fifth arguments, defendants seem to argue that the

5   Court should not grant leave to supplement because this will be a complicated case.  See Dkt.

6   # 8-12.  The Court, however, is well-equipped to handle complicated matters.  It is unclear how

7   requiring plaintiff to file this as a new suit would uncomplicate the claims.  Further, as

8   defendants recognize, additional parties may join or intervene in existing litigation.  See Dkt.

9   # 19 at 12.  Defendants are welcome to utilize proper procedure to seek to join any other parties

10  that they deem appropriate.

11        Finally, defendants argue that the Court should deny supplementation because it might

12  complicate an eventual award of plaintiff's attorney's fees.  See id. at 12.  This falls short of

13  undue prejudice.  The Court is confident that plaintiff's counsel will maintain appropriate billing

14  records throughout the course of litigation.

15        In summary, plaintiff may file its first amended and supplemental complaint, striking the

16  claims dismissed by this Order.

17  **V.   Conclusion**

18        For all of the foregoing reasons, IT IS HEREBY ORDERED that:

19  1.  Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(1) & (6) (Dkt. # 16) is

20      GRANTED.  Plaintiff's pre-ESA-exemption claims relating to the Skykomish Program

21      are dismissed with prejudice as moot.  Plaintiff's post-ESA-exemption claims relating to

22      the Skykomish Program are dismissed without prejudice.

23  2.  Plaintiff's Motion for Leave to File First Amended and Supplemental Complaint (Dkt.

24      # 18) is GRANTED.  Plaintiff may file its first amended and supplemental complaint,

25      striking the claims dismissed by this Order and any other moot claims.

26  3.  Plaintiff's Motion to Supplement the Factual Record (Dkt. # 34) is DENIED.

27  4.  The Clerk of Court is directed to return this action to the Court's active caseload.

28  ORDER GRANTING MOTION TO DISMISS AND
GRANTING MOTION FOR LEAVE TO AMEND
AND SUPPLEMENT COMPLAINT - 26

1   DATED this 7th day of February, 2023.

2

3

4   Robert S. Lasnik
    United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
    ORDER GRANTING MOTION TO DISMISS AND
    GRANTING MOTION FOR LEAVE TO AMEND
    AND SUPPLEMENT COMPLAINT - 27