|   |   |
|---|---|
| | UNITED STATES DISTRICT COURT<br>WESTERN DISTRICT OF WASHINGTON<br>AT SEATTLE |

| | |
|---|---|
| WILD FISH CONSERVANCY,<br><br>                Plaintiff,<br><br>     v.<br><br>WASHINGTON DEPARTMENT OF FISH & WILDLIFE; KELLY SUSEWIND, in his official capacity as the Director of the Washington Department of Fish & Wildlife; BARBARA BAKER, in her official capacity as Chair of the Washington Fish & Wildlife Commission; MOLLY LINVILLE, in her official capacity as Vice Chair of the Washington Fish & Wildlife Commission; JAMES ANDERSON, in his official capacity as a member of the Washington Fish & Wildlife Commission; LORNA SMITH, in her official capacity as a member of the Washington Fish & Wildlife Commission; JOHN LEHMKUHL, in his official capacity as a member of the Washington Fish & Wildlife Commission; TIM RAGEN, in his official capacity as a member of the Washington Fish & Wildlife Commission; MELANIE ROWLAND, in her official capacity as a member of the Washington Fish & Wildlife Commission; and KIM THORNBURN, in her official capacity as a member of the Washington Fish & Wildlife Commission,<br><br>                Defendants. | CASE NO. 21-cv-169<br><br>ORDER GRANTING, IN PART, WILD FISH CONSERVANCY'S MOTION FOR AN AWARD OF LITIGATION EXPENSES |

ORDER GRANTING, IN PART, WILD FISH CONSERVANCY'S MOTION FOR AN AWARD OF LITIGATION EXPENSES - 1

## 1. INTRODUCTION

Before the Court is Plaintiff Wild Fish Conservancy's ("Wild Fish") Motion For An Award of Litigation Expenses under Rule 54(d) and section 11(g) of the Endangered Species Act of 1973 ("ESA"), 16 U.S.C. § 1540(g). Dkt. No. 83 at 1. Wild Fish seeks $456,721.45 in attorneys' fees and costs. *See* Dkt. Nos. 92 at 9; 93 at 4. For the reasons explained below, the Court GRANTS Wild Fish's motion in part.

## 2. BACKGROUND

Wild Fish sued Defendants Washington Department of Fish and Wildlife (WDFW), its Director, and its Commissioners (collectively, "WDFW Officials") in 2021, alleging 14 hatchery programs, including WDFW's new steelhead hatchery program on the South Fork of Skykomish River ("Skykomish Program"), violated section 9 of the ESA for "take" of ESA-listed species. Dkt. No. 1.

There have been many filings in this matter, but the Court focuses on the relevant filings for the purpose of this motion. On March 5, 2021, the Court entered a Stipulation and Order ("Stipulated Order"). Dkt. No. 7. The Stipulated Order prohibited WDFW from (1) collecting broodstock for the program from Washington waterbodies, and (2) releasing hatchery fish from the program into any waterbody where fish could migrate to the Puget Sound and thereby impact Puget Sound salmonids. Dkt. No. 7 at 3.

On September 9, 2021, the Washington State Department of Fish and Wildlife and the named Commissioners moved to dismiss, and the Honorable Robert S. Lasnik granted the motion on February 7, 2023, as well as Wild Fish's motion to

file a first amended and supplemental complaint. Dkt. Nos. 16, 18, 41. On February 22, 2023, Wild Fish filed its First Amended and Supplemental Complaint ("First Amended Complaint"). Dkt. No. 44. On April 12, 2023, Wild Fish filed its Second Amended and Supplemental Complaint which removed WDFW as a Defendant. Dkt. No. 49.

On August 3, 2023, the Court approved a Consent Decree between the parties. Dkt. No. 81. The Consent Decree requires WDFW Officials to facilitate and fund joint WDFW/Wild Fish snorkel surveys for four years and to create and maintain a new compliance review and public disclosure program. *Id.*

Wild Fish now seeks its fees and costs for its work on this matter.

### 3. DISCUSSION

**3.1 Legal standard.**

Under the ESA, the Court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Whether an award of attorney's fees is "appropriate" is measured by whether a party "*achiev[ed] some success*, even if not major success." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 (1983). This standard is intended to "expand the class of parties eligible for fee awards" and "to permit awards of fees to all partially prevailing parties." *Id.* at 691. The Ninth Circuit has held that courts should "apply to the ESA the civil rights standard for awarding fees to prevailing defendants." *Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1095 (9th Cir. 1999).

**3.2     Wild Fish is the prevailing party.**

"Litigation that results in an enforceable settlement agreement can confer 'prevailing party' status on a plaintiff." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010). "In determining whether a settlement agreement confers prevailing party status on a plaintiff, [the Ninth Circuit has] used a three-part test, looking at: '(1) judicial enforcement; (2) material alteration of the legal relationship between the parties; and (3) actual relief on the merits of [the plaintiff's] claims.'" *Id.*[1]

Here, the parties reached two agreements that were then made enforceable by court order. The first, the Stipulated Order, provides some of the preliminary relief sought in the initial complaint. Dkt. No. 7. Namely, it prevented WDFW from taking certain actions until the National Marine Fisheries Service and the U.S. Fish and Wildlife Service each provide exemptions for liability under section 9 of the ESA. *Id.* at 3. The second, the Consent Decree, created enforceable obligations for WDFW to further the goals of the ESA. Dkt. No. 81. Specifically, under the Consent Decree, WDFW must conduct multiple systemic snorkel surveys in partnership with Wild Fish, develop and implement a Compliance Review and Disclosure Program

---

[1] Because the Court entered a Stipulated Order and Consent Decree, it need not evaluate Wild Fish's motion for fees and costs under the "catalyst theory" which allows such an award only when there is *no judicially sanctioned* change in the legal relationship of the parties. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001) ("[E]nforceable judgments on the merits and court-ordered consent decrees created the material alteration of the legal relationship of the parties necessary to permit a fee award, whereas the catalyst theory would allow awards where there was no judicially sanctioned change in that relationship[.]"). The parties agree. Dkt. Nos. 83 at 8-9; 90 at 2.

ORDER GRANTING, IN PART, WILD FISH CONSERVANCY'S MOTION FOR AN AWARD OF LITIGATION EXPENSES - 4

within six months, and submit Hatchery and Genetic Management Plans (HGMPs) for all remaining hatchery programs listed in Appendix A of the decree within a set timeframe. *Id.* at 6–8.

Wild Fish is a prevailing party per the Ninth Circuit's three-part test:

First, the terms of the Stipulated Order and Consent Decree are judicially enforceable. *See Saint John's Organic Farm v. Gem Cnty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009) ("Binding settlement agreements over which the district court retains jurisdiction to enforce are judicially enforceable.").

Second, the Stipulated Order and the Consent Decree effected a material alteration in the legal relationship between the parties. *See Buckhannon Bd. and Care Home, Inc.*, 532 U.S. at 600 ("[E]nforceable judgments on the merits and court-ordered consent decrees create[] the material alteration of the legal relationship of the parties necessary to permit [an award of attorney's fees]."). "A settlement agreement meaningfully alters the legal relationship between parties if it allows one party to require the other party 'to do something it otherwise would not be required to do.'" *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) (internal citation omitted).

As described above, under the Stipulated Order, WDFW agreed to forgo certain actions, and under the Consent Decree, WDFW agreed to take certain actions. Dkt. Nos. 7, 81. Both documents allow for court enforcement and create obligations that WDFW must meet. *See id.* Even if these agreements required WDFW to do some of what it was already doing or planning to do, its behavior is

now legally required rather than voluntary. *See Saint John's Organic Farm*, 574 F.3d at 1059.

Third, Wild Fish achieved actual relief on the merits of its claims. *La Asociacion*, 624 F.3d at 1089. WDFW argues that neither the Stipulated Order nor the Consent Decree awarded Wild Fish the relief it sought in this action, and therefore it is not a prevailing party. Dkt. No. 90 at 3-8. But "a plaintiff must [only] receive some actual relief that serves the goals of the claim in his or her complaint . . . the relief achieved need not be of precisely the same character as the relief sought in the complaint, but it must require defendants to do something they otherwise would not have been required to do." *Saint John's Organic Farm*, 574 F.3d at 1059; *see also La Asociacion*, 624 F.3d at 1090 ("While some relief is required, 'an extremely small amount of relief is sufficient to confer prevailing party status.'") (internal citation omitted).

In its initial complaint, Wild Fish asked the Court to "[e]njoin WDFW from implementing . . . the South Fork Skykomish River summer steelhead hatchery program, unless and until compliance with the ESA is achieved." Dkt. No. 1 at 19. Wild Fish achieved some of its requested relief through the Stipulated Order. *See* Dkt. No. 7. For example, WDFW agreed not to "[c]ollect, trap, or otherwise remove steelhead from the South Fork Skykomish River" or "[r]elease any steelhead that were produced through the Hatchery Program into the South Fork Skykomish River." *Id.* at 3.

In its amended complaints, Wild Fish asked the Court to "[i]ssue a mandatory injunction requiring WDFW officials to comply with the ESA." Dkt. Nos.

49 at 24, 44 at 25. The relief in the Consent Decree supports this goal. *See* Dkt. No. 81. For example, the Consent Decree obligates WDFW to undertake multiple systemic snorkel surveys per year with Wild Fish and to create a Compliance Review and Disclosure Program that outlines the "applicable authorization, permit, and/or approval requirements under Section 9 of the ESA" for "each salmon and/or steelhead hatchery program that WDFW and/or the State of Washington owns and/or operates in Puget Sound." *Id.* at 6–7.

In sum, Wild Fish is the prevailing party here.

### 3.3 The Eleventh Amendment does not bar an award of litigation expenses.

The Court turns to WDFW's argument that Wild Fish's request for litigation expenses and fees should be denied under the Eleventh Amendment.

The ESA provides that "any person may commence a civil suit . . . to enjoin any person, including . . . any . . . governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of" the statute. 16 U.S.C.A. § 1540(g)(1)(A). The Eleventh Amendment states that the power of the federal judiciary "shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has explained that this provision "stand[s]" for the "presupposition" that "each State is a sovereign entity in our federal system" and "that 'it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Seminole Tribe*

ORDER GRANTING, IN PART, WILD FISH CONSERVANCY'S MOTION FOR AN AWARD OF LITIGATION EXPENSES - 7

*of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (*quoting Hans v. Louisiana*, 134 U.S. 1, 13 (1890)) (alterations omitted). "[T]he Eleventh Amendment generally prevents a state and state government actors from being sued in federal court without the state's consent." *Koala v. Khosla*, 931 F.3d 887, 894 (9th Cir. 2019) (citation omitted).

But there are exceptions to Eleventh Amendment immunity. "[U]nder the principle established in *Ex parte Young* . . . private individuals may sue state officials in federal court for *prospective* relief from ongoing violations of federal law, as opposed to money damages, without running afoul of the doctrine of sovereign immunity." *Id.* at 895 (internal citation omitted). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* Injunctive relief is allowed against state officers in their individual capacities when "'a plaintiff seeks prospective relief to end a state officer's ongoing violation of federal law.'" *Yakama Indian Nation v. State of Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 288 (1997) (O'Connor, J., concurring)).

Wild Fish's lawsuit, and specifically, its Second Amended Complaint, seeks the type of prospective relief that falls under the exception to *Ex parte Young*. Wild Fish alleged the WDFW Officials' Hatchery Programs violated section 9 of the ESA and regulations, failed to demonstrate compliance to the ESA for programs the officials had authorizations or exemptions for. Dkt. No. 49 at 24. Wild Fish alleged

ORDER GRANTING, IN PART, WILD FISH CONSERVANCY'S MOTION FOR AN AWARD OF LITIGATION EXPENSES - 8

that the WDFW Officials' violations of the ESA and "regulations promulgated under section 4(d) of the ESA" are "ongoing." *Id*. As relief, Wild Fish sought a declaratory judgment that WDFW Officials violated the ESA and injunctive relief commanding WDFW Officials to (1) comply with the ESA, (2) stop implementing or funding the Hatchery programs until they comply with the ESA, (3) and provide other injunctive relief to ensure WDFW Officials no longer violate the ESA. *Id*. at 24-25. The Court is satisfied the relief sought by Wild Fish is consistent with the *Ex parte Young* doctrine and not barred by the Eleventh Amendment.

Finally, Wild Fish also requested its litigation expenses under Section 11(g)(4) of the ESA. Awards of reasonable attorney's fees, costs, and litigation expenses, are "not subject to the strictures of the Eleventh Amendment." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 279 (1989). WDFW's argument that Wild Fish seeks retroactive fees is unavailing—Wild Fish is eligible for fees because they sought and received injunctive relief. *See, e.g.*, *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013) ("A consent decree is a hybrid; it is both a settlement and an injunction.").

### 3.4   The Court awards litigation costs to Wild Fish.

The Court has determined that Wild Fish is eligible for fees as the prevailing party. The Court must now determine whether the requested attorneys' fees are reasonable. Wild Fish's Motion sought a lodestar of $446,467 for 1,013.8 hours of work on this case. Dkt. No. 92 at 9. It calculated its lodestar based on the time spent

on the instant ligation by each attorney and multiplied by the hourly rate for each attorney. Dkt. No. 83 at 10.

To determine the appropriate lodestar, the Court multiplies the number of hours reasonably expended on the litigation times a reasonable hourly rate. *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 901 (9th Cir. 1995). The Court may then "increase or reduce the presumptively reasonable lodestar fee" based on various factors. *Cunningham v. Cnty. Of L.A.*, 879 F.2d 481, 484 (9th Cir. 1988). The Court should exclude hours that were "not reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citation omitted). The Court may also reduce hours if the time claimed is "excessive, redundant, or otherwise unnecessary." *Id.* Other factors that may reduce the hours "deemed reasonable" include: "(1) the overstaffing of a case or a demonstration of exceptional skill and efficiency; and (2) the relative novelty and complexity of the issued raised." *Cunningham*, 879 F.2d at 485 (citing *Hensley*, 461 U.S. at 434). Additionally, "where a plaintiff has only achieved limited success, not all hours expended on the litigation are eligible for inclusion in the lodestar, and even those that are eligible may be subject to a discretionary reduction." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 835 F.3d 1048, 1060 (9th Cir. 2016). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992).

### 3.4.1   Reasonableness of hourly rate.

WDFW did not challenge any of the requested rates. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's own affidavits--that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). In determining hourly rates, the Court looks to "prevailing market r[a]tes in the relevant community." *Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

The attorney's requested rates vary with experience level and range from $290 to $700. *See* Dkt. No. 83 at 15. Based on Wild Fish's supporting materials and the Court's own local knowledge, and Defendants' failure to contest the proposed rates, the Court finds that the requested rates are reasonable. *See* Dkt. Nos. 84–86, 89.

### 3.4.2   Reasonableness of hours worked.

To determine the reasonable number of hours to be compensated, the Court must consider "whether, in light of the circumstances the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106,

1111 (9th Cir. 2008). The hours may be reduced by the Court if the "documentation of the hours is inadequate"; "if the case was overstaffed and hours are duplicated"; or "if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The Court has the "authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure 'as a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (internal citation omitted).

The Court questions Wild Fish's decision to utilize Brian Knutsen to work on tasks such as motions to extend deadlines, which could have been delegated to a more junior associate with a lower billing rate. *See Asset Mktg. Sys., Inc. v. Gagnon*, No. 03-CV-2234-B (CAB), 2009 WL 10720557, at *6 (S.D. Cal. May 7, 2009) ("By contrast, a senior attorney should delegate appropriate tasks to associates, for example, legal research."); *Northon v. Rule*, 494 F. Supp. 2d 1183, 1187 (D. Or. 2007) (reducing fee award where, among other things, when senior attorney failed to delegate relatively simple tasks to junior associates). The same is true for tasks performed by associate attorneys, such as preparing tables for briefs, filing briefs, or preparing mailings, that could have been performed by legal staff. Thus, the Court will reduce the overall fee award by 2.5% due to the team's failure to properly delegate certain tasks to more junior associates or legal staff.

A reduction is also warranted for excessive conferencing time between the Kampmeier & Knutsen attorneys. The Court acknowledges that conferences between members of the same legal team are an important part of litigation and can

ORDER GRANTING, IN PART, WILD FISH CONSERVANCY'S MOTION FOR AN AWARD OF LITIGATION EXPENSES - 12

sometimes promote efficiencies. There is a point, however, at which conferences can become excessive, redundant, or unnecessary. Here, there are too many "strategy" conferences between the attorneys, so another 2.5% reduction is justified.

WDFW argues the requested fee is unreasonable based on Wild Fish's limited success and its inclusion of fees related to the original complaint and the motion to intervene by the tribes. The Court will not accept WDFW's proposal to exclude all fees incurred before the date that Wild Fish filed its First Amended Complaint. Wild Fish achieved some relief in the Stipulated Order, which was entered before Wild Fish amended its complaint.

The Court agrees with WDFW's contention that they are not responsible for the attorney's fees attributable to the motions to intervene by tribes who asserted their treaty rights could be impacted Plaintiff's lawsuit. *See* Dkt. 90 at 8; *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991) (denying attorney fees that are not "incurred in opposing government resistance"). WDFW alleges that $23,960 of the attorneys' fees are attributable to time spent on the motions to intervene. *See* Dkt. Nos. 85 at 12–44; 90 at 8. Wild Fish does not contest this figure and the Court's review of the time records supports this reduction. The Court excludes $23,960 from the recoverable attorney's fees.

Next, the Court considers the "extent of [Wild Fish's] success" in "determining the proper amount of an award of attorney's fees." *Hensley*, 461 U.S. at 440. First, the Court must consider whether "'the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded.'" *Webb v. Sloan*,

330 F.3d 1158, 1168 (9th Cir. 2003) (internal citation omitted). It did not. Wild Fish brought only one claim—violation of Section 9 of the ESA.

The Court next assesses whether Wild Fish "achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (internal citation omitted). "[W]here the plaintiff achieved only limited success, the district court should award only the amount that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. "[T]he product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Id.* at 436.

Through the Stipulated Order and Consent Decree, Wild Fish bound WDFW to take specific actions towards the litigation's goals. But Wild Fish did not receive all the relief that it sought. Given Wild Fish's partial success, the Court exercises its discretion to reduce the fee award by 10%. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[T]he district court can impose a small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation."). The Court awards Wild Fish $342,442.90 in attorneys' fees.[2]

### 3.4.3   Costs and fees.

The citizen suit provision of the ESA allows the Court to "award costs of litigation (including reasonable attorney and expert witness fees)." 16 U.S.C. § 1540(g)(4). Wild Fish requests $10,254.45 in expert witness fees and costs. These

---

[2] The math breaks down as follows: ($446,467.00-$23,960) * .85 = $359,131.

ORDER GRANTING, IN PART, WILD FISH CONSERVANCY'S MOTION FOR AN AWARD OF LITIGATION EXPENSES - 14

costs and fees were for experts that provided declarations and consultation in the case. Dkt. No. 83 at 12, 15. WDFW did not challenge any of these costs. The Court finds that the expert fees and litigation costs sought by Wild Fish are properly supported and reasonable. The Court concludes that Wild Fish is entitled to recover an award of $9,510 for expert costs and $744.45 for litigation costs.

## 4. CONCLUSION

The Court GRANTS, in part, Wild Fish's motion for attorney's fees and costs. Dkt. No. 83. The Court awards Wild Fish $359,131 in attorneys' fees, $9,510 for expert costs, and $744.45 for litigation costs.

Dated this 30th day of March, 2024.

Jamal N. Whitehead
United States District Judge